1  James W. Denison, Bar No. 155337
   E-Mail: jameswdenison@aol.com
2  26895 Aliso Creek Rd., Ste. B-19
   Aliso Viejo, CA 92656
3  (949) 273-8564

4

   Attorney for Plaintiff,
5  FANTASIA DISTRIBUTION, INC.

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  FANTASIA DISTRIBUTION, INC., a California corporation, | CASE NO. 8:18-cv-01612 |
| 12 | **COMPLAINT FOR:** |
| Plaintiff, | |
| 13 | **(1) CONTRIBUTORY TRADEMARK INFRINGEMENT;** |
| 14  vs. | |
| 15  XEO INTERNATIONAL, LTD., a United Kingdom limited company with its principal place of business in Germany, and DOES 1-10, inclusive, | **(2) AIDING AND ABETTING TRADEMARK INFRINGEMENT;** |
| 16 | **(3) VIOLATION OF BUSINESS & PROFESSIONS CODE 17200 ET SEQ.** |
| 17  Defendants. | |
| 18 | **AND DEMAND FOR JURY TRIAL** |

For its Complaint against defendant XEO International, Ltd. and Does 1 through 10, inclusive, plaintiff Fantasia Distribution, Inc. ("Fantasia") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under a federal statute, and in particular the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and 28 U.S.C. § 1331, and the court's supplemental jurisdiction under 28 U.S.C. § 1367.

2. In addition, this court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states or countries in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

3. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District and defendant XEO is subject to the court's personal jurisdiction with respect to this action. 28 USC § 1391(b).

## PARTIES

4. Plaintiff Fantasia is a corporation duly incorporated under the laws of the State of California with its principal place of business in Anaheim, California.

5. Defendant XEO is a United Kingdom limited company organized under the laws of the Country of England with its principal place of business in Berlin, Germany.

6. The true names, identities, and capacities, whether individual, associate, corporate, or otherwise, of the defendants designated herein as DOES 1 through 10, inclusive, are unknown to Fantasia at this time, and Fantasia therefore sues said defendants by such fictitious names. Fantasia will seek leave of court to amend this Complaint to allege the true names, identities, and capacities of said defendants when they have been ascertained. Fantasia is informed and believes and thereon alleges that each of the fictitiously named defendants is to some extent legally responsible for the events, occurrences, and happenings herein alleged, and that the Fantasia's damages as herein alleged were proximately caused by their conduct. Each of the defendants was an agent or employee of the other defendants and acted on behalf of one another in the acts and omissions alleged herein.

**GENERAL ALLEGATIONS**

7.  Fantasia has engaged in the manufacture and distribution of hookah tobacco products for more than a decade. Fantasia has invested heavily in developing and marketing a variety of hookah tobacco flavors and, as a result, it has become one of the premier manufacturers and distributors of hookah tobacco and related products in the hookah industry. Fantasia's efforts have also generated name recognition for its brands.

8.  Fantasia has also applied for and obtained trademark registrations for numerous of the flavors it sells. These registered trademarks include the following:

| Mark | Registration No(s). | Date(s) Granted |
| --- | --- | --- |
| 4 PLAY | 4009579, 4579016 | Aug. 9, 2011, Aug. 5, 2014 |
| ADIOS | 4009580, 4591788 | Aug. 9, 2011, Aug. 26, 2014 |
| DIRTY BLONDE | 4305966, 4623627 | Mar. 19, 2013, Oct. 21, 2014 |
| ICE | 3998201, 4600173 | July 19, 2011, Sept. 9, 2014 |
| MAGIC DRAGON | 4346267, 4583204 | June 4, 2013, Aug. 12, 2014 |
| SURFER | 4356114 | June 25, 2013 |

9.  In February 2013, Fantasia representatives attended a Tobacco Plus Expo conference in Las Vegas, Nevada. One of the exhibitors, XEO, was promoting what it called "shisha to-go" electronic smoking devices resembling the tube and mouthpiece portions of a hookah pipe. Fantasia inquired whether it would be possible to develop electronic versions of its own popular tobacco flavors for use in the devices. XEO was receptive to the idea.

10. XEO was not the only electronic-smoking-device manufacturer or supplier that Fantasia considered working with. However, XEO represented that it had superior capabilities and that its German design, engineering, and quality control resulted in a product that was better than the competition. XEO also claimed that it had a patent pending on its product, which could give it the exclusive right to market its design in the United States and elsewhere.

11. Impressed with XEO's representations, Fantasia agreed to work with XEO in developing electronic hookah, or "E-Hookah," products with flavors resembling those Fantasia had been marketing under its traditional hookah tobacco brands. To that end, Fantasia provided

XEO with confidential information about its ingredients and proportions, as well as instructions for refining the flavors of prototypes XEO provided to Fantasia. Fantasia also provided original digital graphics and artwork for the E-Hookah products' assembly and packaging, based on the logos and trade dress Fantasia had developed for its traditional tobacco brands.

12. In March 2013, XEO began supplying and Fantasia began marketing and distributing the aforementioned disposable E-Hookah devices throughout the United States under seven Fantasia brand names, including names for which Fantasia had obtained the registrations set forth in paragraph 8, along with other names that, as marketed by Fantasia, are also protected under Section 43 of the Lanham Act. Specifically, the following brand names were used on the E-Hookahs that XEO had manufactured for Fantasia and that Fantasia marketed and distributed: ADIOS, 4PLAY, MAGIC DRAGON, PEACH FUZZY NAVEL, PURPLE HAZE, SURFER, and WASHINGTON APPLE. Subsequently, three additional brand names were used: DIRTY BLONDE, ICE Mint, and JOKER.

13. Within months of Fantasia's first sales of E-Hookahs, Fantasia became aware of a number of competitors offering electronic hookah products whose design was identical or nearly identical to XEO's. When Fantasia brought this to XEO's attention, XEO revealed that it had outsourced its manufacturing to a Chinese company, which might be responsible for the copycat products. XEO assured Fantasia, however, that it expected to obtain the registration for its product design soon, which it indicated would enable it to address such infringement issues.

14. In July 2013, XEO informed Fantasia that the United States Patent & Trademark Office ("USPTO") was indeed going to issue its patent on July 30, 2013. The patent that issued, No. D687181, was a design patent (the "Design Patent") for the XEO electronic smoking device consisting of a tube and a mouthpiece shaped like a common hookah pipe mouthpiece.

15. Despite the issuance of the patent, those who had adopted XEO's design continued manufacturing their similar- and identical-looking electronic smoking devices. Fantasia therefore asked XEO what it planned to do to curb the infringement of its Design

Patent. In numerous email communications, XEO represented that it had obtained counsel and was addressing the problem.

16. Despite XEO's representations, by the end of August 2013, manufacturers of E-Hookahs bearing the shape of the Design Patent started offering products that also duplicated Fantasia's own trademarks and trade dress. The majority of the offerings appeared on the Alibaba.com web site. As was revealed later through Fantasia's investigations, manufacturers offering so-called Fantasia E-Hookahs were working with first-run graphics that Fantasia had only provided to XEO and had never made available to the public. In other words, not only had XEO failed to protect its own Design Patent, but XEO's failure to maintain supervision over its production had allowed unauthorized products of unknown quality being sold to the public bearing Fantasia's trademarks and trade dress.

17. In light of the infringement problems, Fantasia had demanded that XEO step up its efforts to police its Design Patent and, if it could not do that, at least reduce its price to that which Fantasia could get from other suppliers who, unlike XEO, did not insist on a higher price in light of its purported exclusive right to market products resembling its Design Patent. Although the parties engaged in numerous emails reflecting the foregoing, and at one point XEO circulated a draft distribution agreement to Fantasia acknowledging that it was agreeing to assume an obligation to enforce its Design Patent, the parties never executed a formal, finalized agreement.

18. The infringement of XEO's Design Patent as well as Fantasia's trademarks continued. Fantasia pursued litigation against alibaba.com, which resulted in listings with knockoffs of Fantasia's products being taken down. Fantasia also began laying the groundwork for lawsuits against the principal distributors of E-Hookah knockoffs in the United States that it identified, which subsequently resulted in Fantasia obtaining injunctive relief and judgments against those perpetrators. XEO, by contrast, had yet to substantiate any of its claimed efforts to address the infringement problem.

19. By November 2013, the dispute over XEO's efforts to enforce its Design Patent and the price it was charging Fantasia reached the point that Fantasia determined to cease doing

business with XEO.  A dispute also arose over peak season shipping charges that XEO had incurred that Fantasia contended were not authorized and that XEO admitted had not been internally authorized but nevertheless insisted Fantasia pay for.

20.     In subsequent months, although Fantasia continued paying for goods XEO had shipped, Fantasia withheld roughly 10 percent of the price XEO claimed was owed.  Fantasia contended that XEO had breached its promise to enforce its Design Patent or reduce its price and that the payment it made, of roughly $2.5 million on the last purchase order, was more than the fair value Fantasia could have paid to obtain the goods elsewhere.

21.     XEO contended that it was entitled to the full price.  In addition, XEO claimed that it had purchased roughly $1.9 million in battery components to fulfill the remainder of Fantasia's last purchase orders.  It also claimed that it had $75,000 worth of packaging materials sitting in a warehouse that Fantasia must accept and pay for.  Fantasia is informed and believes, and on that basis alleges, that the $75,000 worth of packaging materials would translate to packaging and labels for roughly half a million units.

22.     In August 2013, XEO filed an action against Fantasia captioned *XEO International, Ltd. v. Fantasia Distribution, Inc., et al.*, No. 30-2014-00739867-CU-BC-CJC, in the California Superior Court for the County of Orange (the "State Court Action").  XEO contended, among other things, that Fantasia had failed to pay for the goods it received, failed to pay shipping charges, and also owed XEO for the $1.9 million in battery components and $75,000 in additional packaging materials.

23.     During the course of discovery, XEO admitted that, contrary to allegations in its complaint and other papers filed with the court, it had not in fact paid $1.9 million for battery components was not actually maintaining such batteries in a warehouse.  It now claimed that it had a strategic partnership with its supplier in China, which had manufactured the batteries. XEO claimed that it did not know what had happened to the batteries since their manufacture and that it was not communicating with the Chinese manufacturer any more, out of fear that such communications might prompt the manufacturer to pursue a claim against XEO

for the $1.9 million. XEO did not, however, drop its claim for $1.9 million regarding the battery components. Nor did it drop the claim for $75,000 in packaging materials.

24. A bench trial of the State Court Action took place in August 2016. During cross-examination, XEO's CEO admitted that he was unable to produce the $75,000 in packaging materials, but he claimed — for the first time — that this was because the packaging materials had been destroyed, at his direction, although he was vague as to when the destruction took place.

25. In closing argument at trial, XEO claimed that it was owed roughly $4 million, including the $1.9 million in battery components that it admitted it had never paid for and never had on hand to deliver to Fantasia. The total also included the $75,000 in packaging materials that XEO had represented only days before that it had destroyed.

26. The trial court ruled that, because the parties never executed a formal distribution agreement, XEO had no obligation to Fantasia to enforce its Design Patent or to reduce the price of its goods. Although the trial court denied XEO the majority of the relief it sought, including the $1.9 million for the battery components XEO never purchased or delivered, the trial court awarded XEO (i) the difference in the price Fantasia paid and the price XEO sought on its last purchase order, (ii) the shipping charges XEO had incurred that Fantasia contended were unauthorized, and (iii) the $75,000 XEO sought for packaging materials XEO admitted it never delivered and claimed to have destroyed.

27. In 2017, Fantasia appealed the judgment entered in the State Court Action, which appeal is currently still pending.

28. At oral argument in the appeal of the State Court Action, XEO's counsel made further representations about the $75,000 worth of packaging materials for the first time. XEO's counsel represented that the disposition of the packaging materials had occurred after the State Court Action had been pending two years. XEO's counsel further represented that, at that time, XEO told the company that was storing the packaging materials in China to "do what you want with them."

29. In the time since the trial of the State Court Action, despite Fantasia's having altered its E-Hookah design so as to no longer resemble XEO's Design Patent, knockoffs of the original XEO Design Patent products bearing Fantasia's labels and packaging have proliferated.

## FIRST CAUSE OF ACTION

(Contributory Trademark Infringement Under Section 43(a)

of the Lanham Act , 15 U.S.C. § 1125(a), Against All Defendants)

30. Fantasia realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth.

31. The trademarks and trade dress packaging designs used on the 10 brands of Fantasia E-Hookah at issue are valid, protectable trademarks owned by Fantasia.

32. The use of identical trademarks and packaging to Fantasia's on E-Hookahs that were not sold or distributed by Fantasia is likely to cause confusion among distributors and consumers as to the source of the goods.

33. Fantasia is informed and believes and on that basis alleges that Defendants materially contributed to infringement of Fantasia's trademarks. The basis for Fantasia's information and belief is XEO's recent admissions that it did not set aside and maintain packaging materials bearing Fantasia's trademarks in a warehouse in order to force a sale of the materials to Fantasia, nor did it even oversee and ensure the destruction of the packaging materials. Instead, XEO has admitted that it told its manufacturer in China that it could "do what you want" with the packaging materials.

34. Fantasia is informed and believes and on that basis alleges that, at the time that XEO told its Chinese manufacturer it could "do what you want" with the packaging materials, XEO knew of the high probability that its manufacturer would use the packaging materials to infringe Fantasia's trademarks and profit off of Fantasia's goodwill. Fantasia is further informed and believes and on that basis alleges that XEO knew, or took deliberate actions to avoid learning of, the infringement that was subsequently perpetrated by its manufacturer.

Fantasia's information and belief is based on XEO's having the ability to monitor and supervise its manufacturer's disposition of Fantasia's packaging materials, which XEO failed to exercise.

35. Fantasia has been harmed by the continued distribution of E-Hookahs bearing XEO's Design Patent and Fantasia's trademarks and trade dress in an amount to be determined at trial.

36. Because of the contributory infringement conduct of XEO, absent an entry of an injunction by this Court, Fantasia will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

## SECOND CAUSE OF ACTION

(Aiding and Abetting Trademark Infringement Under Section 43(a)
of the Lanham Act, 15 U.S.C. § 1125(a), Against All Defendants)

37. Fantasia realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth.

38. Fantasia is informed and believes and on that basis alleges that Defendants gave substantial assistance or encouragement to its manufacturer in China to commit trademark infringement. The basis for Fantasia's information and belief is XEO's recent admissions that it did not set aside and maintain packaging materials bearing Fantasia's trademarks in a warehouse in order to force a sale of the materials to Fantasia, nor did it even oversee and ensure the destruction of the packaging materials. Instead, XEO has admitted that it told its manufacturer in China that it could "do what you want" with the packaging materials.

39. By giving its Chinese manufacturer Fantasia's packaging materials, XEO gave substantial assistance to accomplishing infringement, in violation of XEO's obligation to Fantasia either to preserve the packaging materials if XEO wanted to force Fantasia to purchase them or to destroy the materials so that they could not be used in infringement of Fantasia's trademarks by third parties.

40. Fantasia has been harmed by the continued distribution of E-Hookahs bearing XEO's Design Patent and Fantasia's trademarks and trade dress in an amount to be determined at trial.

41. Because of the infringement conduct XEO aided and abetted, absent an entry of an injunction by this Court, Fantasia will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

### THIRD CAUSE OF ACTION

(Violation of California Business & Professions Code § 17200 et seq.,

Against All Defendants)

42. Fantasia realleges and incorporates by reference paragraphs 1 through 41 as though fully set forth.

43. Defendants' contribution and/or aiding and abetting of the sale of goods bearing marks identical to Fantasia's marks, and trade dress indistinguishable from Fantasia's, has enabled counterfeiters to misappropriate Fantasia's goodwill and unfairly compete with Fantasia.

44. The aforementioned infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Fantasia's products by the use of the Fantasia marks and packaging.

45. Fantasia has no adequate remedy at law and is suffering irreparable injury as a result of Defendants' actions.

### PRAYER

WHEREFORE, Fantasia prays for relief as follows:

**ON THE FIRST AND SECOND CAUSES OF ACTION:**

1. For compensatory damages;
2. For an injunction enjoining XEO from engaging in, or allowing others within its supervision or control from engaging in, the infringing activities alleged;
3. For costs of suit;
4. For attorney fees;
5. For such other and further relief as the Court deems proper.

COMPLAINT; DEMAND FOR JURY TRIAL

**ON THE THIRD CAUSE OF ACTION:**

1. For restitution;
2. For an injunction enjoining XEO from engaging in, or allowing others within its supervision or control from engaging in, the infringing activities alleged;
3. For costs of suit;
4. For attorney fees;
5. For such other and further relief as the Court deems proper.

Dated:  September 10, 2018

                                                        _____
                                                            James W. Denison

                                                            Attorney for
                                                            FANTASIA DISTRIBUTION, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff FANTASIA DISTRIBUTION, INC., hereby demands a jury trial in the above-entitled action.

Dated: September 10, 2018

　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　James W. Denison
　　　　　　　　　　　　　　　　　　　Attorney for
　　　　　　　　　　　　　　　　　　　FANTASIA DISTRIBUTION, INC.